**UNITED STATES of America,
Appellee,**

v.

**Daryl LEWIS, Defendant,**

**Calvin Pompey, Defendant–Appellant.**

**No. 03–1595.**

United States Court of Appeals,
Second Circuit.

April 1, 2004.

Jane Simkin Smith, Millbrook, NY, for Appellant.

David C. James, Assistant United States Attorney (Peter A. Norling, Assistant United States Attorney, Roslynn R. Maukopf, United States Attorney, on the brief), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, for Appellee, of counsel.

Present: FEINBERG, CABRANES and POOLER, Circuit Judges.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is hereby **AFFIRMED.**

Calvin Pompey appeals from an amended judgment entered on September 26, 2003 in the District Court convicting him, after a jury trial, of conspiracy to import cocaine and importation of cocaine. On appeal, Pompey argues first that the District Court erred in imposing on him a three-level enhancement based upon his aggravated role in the offense. Specifically, although Pompey does not dispute that he was a manager or supervisor of a cocaine importation conspiracy, he contends that he should have received a two-level enhancement pursuant to U.S.S.G. 3B1.1(c), because there were fewer than five participants in the conspiracy. Pompey argues also that the District Court erred in declining to grant him a downward departure based on exaggerated disparities between his sentence and those of his co-conspirators, and because the government engaged in manipulation to create this disparity. Both claims are without merit.

First, Judge Amon did not err, much less *clearly* err, when she found that Kwana Blissett was a participant in a conspiracy that included Pompey, Daryl Lewis, Jeffrey Watson, and a man in Jamaica known as "D." Instead, Judge Amon prop-

erly found that Blissett and Watson, who both worked as couriers, were part of the *same* conspiracy, because they were both "directly aware that the scheme was larger than themselves, than their individual roles."

Before they were in Jamaica together, the record reflects that both Watson and Blissett had been approached by Daryl Lewis about working as couriers over a period of several months. Moreover, Lewis told both Watson and Blissett that he had made prior smuggling trips. Based on these interactions with Lewis, Watson and Blissett could surmise that other couriers were being used to smuggle drugs. *See United States v. Manarite*, 448 F.2d 583, 589 (2d Cir.1971) (explaining that individuals are "spokes" in a "wheel and spokes conspiracy" if they "knew or had reason to know of the existence, but not necessarily the identity, of one or more of the other spoke participants in the wheel conspiracy").

Further, and in any event, Watson and Blissett each learned of the other's smuggling activities in Jamaica and directly cooperated with one another. Specifically, Watson and Blissett were both present for a conversation in Blissett's hotel room in which "D" told Blissett to get bigger sandals (in which to carry drugs), and Watson and Blissett subsequently went shopping together for clothing to match the sandals. Additionally, at "D's" direction, Blissett waited to learn whether Watson had successfully made it to New York before attempting to make her own trip. She then abandoned her smuggling attempt when she had not heard anything about Watson. Based on this evidence of mutual cooperation between Blissett and Watson, we cannot conclude that the District Court erred when it counted five members in Pompey's conspiracy.

 We will not consider Pompey's contention that the District Court should have granted his motion for a downward departure. A district court's refusal to grant a downward departure generally is not appealable. *See, e.g., United States v. Silleg*, 311 F.3d 557, 561 (2d Cir.2002). Although "[w]e have recognized an exception to this rule for cases in which the sentencing judge mistakenly believes that he or she lacks the authority to grant a given departure," *id.* (internal quotation marks omitted), we perceive no basis to invoke this exception in the instant case. Pompey argued to the District Court, as he argues again on appeal, that his sentence is disproportionately severe compared with those of his co-defendants, because the Government was not consistent in its application of the Sentencing Guidelines. Judge Amon carefully questioned defense counsel about this argument, and then decided that, even if the large disparity between Pompey's sentence and his co-defendants' gave her discretion to depart, she would not exercise that discretion. Contrary to Pompey's view, Judge Amon *did* address his argument that the disparity resulted from government manipulation when she explained that "what greatly distinguishes [Pompey] from his codefendants is, in this *court's* view, there was no genuine acceptance of responsibility."

We have considered all of the defendant's claims on appeal and we hereby **AFFIRM** the judgment of the District Court.